IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**ORVILLE R. SANDERS**  **PLAINTIFF**

v.  1:09-CV-00021-WRW

**HARTFORD LIFE & ACCIDENT**
**INSURANCE COMPANY**  **DEFENDANT**

**ORDER**

Pending are cross-Motions for Summary Judgment (Doc. Nos. 9, 12). The parties have responded to each motion.[1] For the reasons set out below, Defendant's Motion for Summary Judgment (Doc. No. 9) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED.

**I.  BACKGROUND**[2]

Plaintiff is 60 years old and began working for Baxter International, Inc. in the mid 1980's. By 2006, he was a Production Technician III, which is considered light to moderate physical work. Plaintiff suffered a heart attack and May 19, 2006, was the last day he worked at Baxter. On May 23, 2006, Plaintiff applied for short-term disability benefits, and they were eventually approved.

On May 23, 2006, Plaintiff underwent heart surgery, and his cardiologist, Dr. Otis Warr, determined that Plaintiff had severe coronary artery disease and congestive heart failure. At a

---

[1]Doc. Nos. 14, 17.

[2]Unless otherwise noted, the Background section comes from Defendant's Statement of Material Facts Not in Dispute (Doc. No. 10). Plaintiff failed to file a Statement of Material Facts Not in Dispute. Although Local Rule 56.1 permits the Court to deem admitted all the facts set forth in Defendant's Motion, I also will consider the facts as set out in Plaintiff's Brief in Support of Motion for Summary Judgment (Doc. No. 13).

1

follow-up visit with Dr. Warr in June, 2006, Plaintiff complained of shortness of breath and fatigue. Plaintiff also indicated that he continued to smoke one or two cigarettes a day.

On July 11, 2006, Dr. Robert Lane, Plaintiff's primary-care physician, filled out an Attending Physician's Statement of Continued Disability, and indicated primary diagnoses of heart attack and coronary artery disease. Plaintiff saw cardiologist Dr. Sayyadul Siddiqui on September 20, 2006. Dr. Siddiqui recommended that Plaintiff get a pacemaker, which he did a month later. At a follow-up visit, Dr. Mangaraju Chakka, who performed the pacemaker surgery, noted that the pacemaker was "working well" and that Plaintiff felt "somewhat improved."

Plaintiff completed Defendant's Long Term Disability ("LTD") benefits questionnaire on October 21, 2006, and indicated that he could perform daily living activities independently. He was approved for LTD benefits on November 6, 2006, under the Policy's "own occupation" definition of disability.[3] Defendant also informed Plaintiff that to receive LTD benefits beyond December, 2007, he would have to be disabled under the "any occupation" definition of disability.[4]

Plaintiff visited Dr. Chakka again on January 26, 2007. Dr. Chakka noted that Plaintiff had "seen improvement" since getting the pacemaker but still had "episodes of shortness of breath." Plaintiff's wife said that Plaintiff was "significantly better" in that "he used to be in the house all day and did not have any energy to do anything" but now he was getting out of the

---

[3] For the first twelve months an employee receives disability benefits, disability means an employee is not gainfully employed and "continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation* . . . ." Doc. No. 8, at 0007.

[4] After twelve months of receiving disability benefits, disability means an employee is not gainfully employed and "continuously unable to engage in any occupation for which *You* are or become qualified for by education training or experience . . . ." Doc. No. 8, at 0007.

house and being active.  In a visit with Dr. Siddiqui on January 26, 2007, it was noted that "overall [Plaintiff was] doing well."  Plaintiff saw Dr. Chakka again in April, 2007, and Dr. Chakka noted that Plaintiff had "seen improvement in his functional status" and that "now he gets out of the house and does more activities."  Plaintiff indicated that he still felt "fatigue and tiredness."

In May, 2007, Dr. Siddiqui noted that Plaintiff had "chronic shortness of air and a lot of secretion from his upper airway," but found "no evidence of fluid overload."

Dr. Chakka completed an Attending Physician's Statement of Continued Disability on June 13, 2007.  She indicated that Plaintiff's activities were limited by "congestive heart failure" and that he should avoid "heavy lifting with the arm on the side of [the pacemaker].

On July 16, 2007, Dr. Lane filled out an Attending Physician's Statement of Continued Disability.  Although Dr. Lane noted the coronary artery disease and congestive heart failure, he indicated that Plaintiff's "heart [was] regular" and did not list any functional restrictions or limitations -- yet he noted that any restrictions or limitations were "permanent."

In a March 23, 2007, interview with Defendant, Plaintiff said that he had been driving a car, exercising some on a treadmill, and doing some woodworking.  At a second interview on September 20, 2007, Plaintiff said that he had shortness of breath most of the time and tired easily.  Plaintiff informed Defendant that he could stand about 40 minutes before needing to sit; had no limitations with sitting; sometimes had shortness of breath while walking, but had been walking on the treadmill 30 minutes a day, five days a week without assistance; could drive; but did not do too much lifting or carrying.  Plaintiff also stated that he probably would not be able to return to work.

In a September 26, 2007, letter, Defendant informed Dr. Siddiqui that it believed Plaintiff could perform light to sedentary work, as defined by the Department of Labor.  In response,

3

Dr. Siddiqui determined that Plaintiff was capable of working at the "sedentary capacity level," but not the "light capacity level." Defendant relayed this information to Dr. Lane, who agreed with Dr. Siddiqui's opinion -- that Plaintiff could work at the "sedentary capacity level."

Defendant prepared an Employability Analysis Report and determined that Plaintiff "possesse[d] the transferable skills required to perform four (4) alternative sedentary occupations in the Machinery Manufacturing and Fabricated Products industries" -- Pager, Atomizer Assembler, Bead Inspector, and Type Inspector. The report noted that these jobs were "prevalent in Mr. Sanders's local and labor market community."

In an October 23, 2007, letter, Defendant informed Plaintiff that, based on the medical opinions of Dr. Siddiqui and Dr. Lane, the Employability Analysis Report, and the entire file, Plaintiff was not disabled under the "any occupation" standard, and that his LTD benefits would terminate on December 4, 2007. Defendant retained an attorney, appealed the decision, and provided additional medical information.

On November 5, 2007, Plaintiff visited with Dr. Lane to "discuss continued disability benefits." Plaintiff informed Dr. Lane that his benefits were going to be terminated and that he was expected to go back to work at a sedentary level. Dr. Lane noted: "I am no expert in legal issues -- but by the definition of sedentary work he will be terminated for long term disability at Hartford. I advised seeing a lawyer about options but [he] may be [able] to draw Soc.
Sec. & retire."

In a November 21, 2007, visit with Dr. Siddiqui, Plaintiff indicated that he recently had "more frequent chest discomfort" and was "undergoing a lot of psychological stress" because his disability benefits were going to be terminated. Plaintiff saw Dr. Siddiqui again on January 4,

2008, and reported that he was "very much fatigued" and "wants to be active but cannot do much because of fatigue."

On January 14, 2008, Plaintiff took Dr. Lane "papers to be completed re: long term disability," and complained of shortness of breath when he walks 100 feet. Dr. Lane sent Plaintiff's lawyer a letter setting out a "narrative history" of what he knew about Plaintiff. Dr. Lane noted:

> Mr.Sanders has been quite disturbed over the discontinuation of his long term disability from Baxter Laboratories and does not feel that he is able to return to work. He has told me in the past that he is worrying about this, and this is disturbing his sleep. I suspect there is some emotional overlay aggravating his problem, but he does have the diagnosis of coronary artery disease with [the three heart attacks], bypass grafting four vessel, and later stent placement, as well as implantation of an AICD device.[5]

On June 3, 2008, Defendant informed Plaintiff's lawyer that the earlier decision to terminate Plaintiff's benefits had been affirmed on appeal. Additionally, Defendant pointed out that the medical records submitted for the appeal did not contradict Plaintiff's treating physicians' conclusions that Plaintiff was capable of performing a sedentary occupation.

## II. DISCUSSION

### A. Standard of Review

Under ERISA, "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . . ."[6] A denial of benefits under a plan governed by ERISA is to be reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms

---

[5]Doc. No. 8, at 833-34.

[6]29 U.S.C. § 1132(a)(1)(B).

5

of the plan."[7] When an ERISA plan grants discretion, courts review a plan administrator's decision under an abuse of discretion standard.[8] A plan administrator's decision will be reversed under an abuse of discretion standard "'only if it is arbitrary and capricious.'"[9] When the insurance company "both determines whether an employee is eligible for benefit and pays benefits out of its own pocket," there is a conflict of interest, which should be taken into consideration when determining whether there was an abuse of discretion.[10]

This particular plan "delegated soles discretionary authority to [Defendant][11] to determine [Plaintiff's] eligibility for benefits and to interpret the terms and provisions of the Policy."[12] The plan clearly gives Defendant discretionary authority under the policy. It also appears that Defendant both determines eligibility for benefits and pays the benefits.

**B.     Was the Decision Arbitrary and Capricious?**

As set out above, a plan administrator's decision will be reversed under an abuse of discretion standard "'only if it is arbitrary and capricious.'"[13] According to Webster's Dictionary, arbitrary means based on impulse or whim;[14] capricious means characterized by or subject to

---

[7]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[8]*Jessup v. Alcoa*, 481 F.3d 1004, 1006 (8th Cir. 2007).

[9]*Groves v. Metro. Life Ins. Co*., 438 F.3d 872, 874 (8th Cir. 2007) (quoting *Herbert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004)).

[10]*Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

[11]The plan names "CNA Group Life Assurance Company," but that company is now called the Hartford Life Insurance Company.

[12]Doc. No. 8, at 0023.

[13]*Groves*, 438 F.3d at 874.

[14]WEBSTER'S NEW RIVERSIDE DICTIONARY 37 (Revised Edition 1996).

whim.[15]  A plan administrator's decision "need be only reasonable, meaning that it must be supported by substantial evidence."[16]  If a plan administrator's decision is based on relevant evidence that a reasonable person could find supports the conclusion, the decision should be upheld.[17]  However, [r]eview of an administrator's decision under an abuse of discretion standard, though deferential, is not tantamount to rubber-stamping the result."[18]

Despite Plaintiff's insistence that the *de novo* review governs this case, I believe that the correct standard is abuse of discretion.  Even considering the fact that Defendant both determines eligibility for benefits and pays the benefits -- indicating a conflict of interest --Defendant's decision was supported by substantial evidence.  In fact, Defendant's decision appears to be supported even under a *de novo* review.

The policy reads:

After the LTD Monthly Benefit has been payable for 12 months, *Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree that *You* are . . . continuously unable to engage in any occupation for which *You* are or become qualified for by education training or experience; and . . . not Gainfully Employed.[19]

In other words, after 12 months of LTD benefits, the issue was whether Plaintiff could perform *any* occupation.  According to the medical records and two of Plaintiff's treating physicians, Plaintiff was capable of performing sedentary work as described by the Department of Labor.  Additionally, there was evidence that Plaintiff exercised on a treadmill for 30 minutes a day, five days a week; had no problems with independently performing daily activities; could sit without

---

[15] WEBSTER'S NEW RIVERSIDE DICTIONARY 106 (Revised Edition 1996).

[16] *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006).

[17] See *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994 (8th Cir. 2005).

[18] *Torres v. UNUM Life Ins. Co. Of America*, 405 F.3d 670, 680 (8th Cir. 2005).

[19] Doc. No. 8, at 0007 (emphasis in original).

restrictions; and could stand for about 40 minutes before needing to sit.  Plaintiff's physicians repeatedly noted that Plaintiff was stable and that the only issues were subjective complaints of fatigue.  Notably, these complaints greatly increased following Defendant's letter to Plaintiff that his disability benefits were going to be terminated.  Finally, the only restriction ever noted by any treated physician was that Plaintiff should not engage in "heavy lifting" with the arm on the side of the pacemaker.  Because Defendant's determination that Plaintiff could perform a sedentary occupation was based on relevant evidence that a reasonable person could find supports the conclusion, the decision should be upheld.

## CONCLUSION

Because the plan administrator's decision was not arbitrary and capricious, the decision should be upheld. Accordingly, Defendant's Motion for Summary Judgment (Doc. No. 9) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED.

IT IS SO ORDERED this 26th day of January, 2010.

/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE